UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                        No. 08 Cr. 170 (LTS)

BRANSON GREEN,

        Defendant.

--------------------------------------------------------x

## MEMORANDUM ORDER

        Defendant Branson Green is charged in a one-count indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Defendant moved to suppress the statements and physical evidence obtained as a result of his January 25, 2008, stop and search on the grounds that the police lacked reasonable suspicion for the stop. On April 24, 2008, the Court held an evidentiary hearing on Defendant's motion to suppress.

### FINDINGS OF FACT

        At the hearing, the Government called three witnesses: New York City Police Department ("NYPD") Officer Isais Martinez, NYPD Officer Peter Marter and NYPD Lieutenant Edward Barry. The Defense called one witness: Defendant's cousin Elijah Green. Defendant did not testify. The Court has carefully considered the parties' pre-hearing submissions, the evidence presented during the hearing, including the testimony and demeanor of the witnesses, and the parties' post-hearing briefs. For the following reasons, the Court finds that the Government has met its burden of demonstrating, by a preponderance of the evidence, that Officer Martinez had reasonable suspicion to stop Defendant and conduct a search.

        Having considered carefully the evidence presented during the hearing and observed

the demeanor of the witnesses, the Court makes the following findings of fact. The credible evidence establishes that Officers Martinez and Marter and Lieutenant Barry were driving northbound on Westchester Avenue on the evening of January 25, 2008, when they first observed two men, whom they later identified as the Defendant and Elijah Green, crossing the street approximately eight car lengths ahead of them. (Martinez Tr. 7-9.) The two men began walking southbound on the northbound side of the street, towards the officers' vehicle. (Martinez Tr. 8.) This occurred between 5:30 and 6:00 p.m. on a busy street lined with lit shops and in the vicinity of a tire shop that provided additional lighting. (Martinez Tr. 7; 22; 11.) Defendant was wearing his pants low on his hips and had multiple layers of clothing, including two t-shirts and a hooded sweatshirt, under his jacket. Defendant appeared to be fidgeting with his jacket. (Martinez Tr. 46-47; 13-14; see also Exhibits D and E.) Police Officer Martinez, who was seated in the front passenger seat of the vehicle, noticed the handle and trigger guard of a gun in the front pocket of Defendant's jeans.[1] (Martinez Tr. 6; 13; 40-41.) Defendant took notice of the Officers' "unmarked" police car[2] and separated from his companion, crossing to the west or southbound side of Westchester Avenue. (Martinez Tr. 14-15.) Officer Martinez directed Officer Marter, who was driving the car, to make a u-turn and head southbound on Westchester Avenue. (Martinez Tr. 6; 14-15; Marter Tr. 66.) Officer Martinez and Lieutenant Barry exited the vehicle at a location where a large van separated the Defendant from the

---

[1] Although Defense counsel repeatedly referred to the location of the gun as in Defendant's waistband (see Marter Tr. 69; Barry Tr. 77), and focused principally on Defendant's waistband in establishing how Defendant's clothing fit on the day of his arrest (see Martinez Tr. 47-50), Officer Martinez and Defendant's own witness, Elijah Green, both testified that the gun was in Defendant's jeans front pocket. (Martinez Tr. 41; E. Green Tr. 84; 92.)

[2] The car, while not labeled as a law enforcement vehicle, was conspicuous for its abundance of antennae and was generally recognized by local residents as a police car. (Martinez Tr. 6; 37.)

officer's car.  (Martinez Tr. 16; Marter Tr. 67-68.)  Going around the van, Officer Martinez identified himself and told Defendant to put his hands up.  (Martinez Tr. 16-17.)  Defendant's movement again revealed the gun in his pocket.  (Martinez Tr. 16.)  Officer Martinez restrained Defendant's arm, removed the gun, which was a .38 caliber revolver, and placed Defendant under arrest.  (Martinez Tr. 16-17.)

## DISCUSSION

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court established that a brief investigative stop – now commonly referred to as a Terry stop – does not infringe the Fourth Amendment right to be free from unreasonable searches and seizures if the police have a "reasonable suspicion" that criminal activity is afoot.  Id. at 30; see also U.S. v. Muhammad, 463 F.3d 115, 121 (2d Cir. 2006).  That is, the officer must have reasonable suspicion to believe that "the person stopped is, or is about to be, engaged in criminal activity."  U.S. v. Muhammad, 463 F.3d at 121 (quoting U.S. v. Cortez, 449 U.S. 411, 417 (1981)).  The officer's suspicion of criminal activity must be "both reasonable and articulable."  Id. at 121.  "[A]n 'inchoate and unparticularized suspicion or 'hunch'' of criminal activity" is insufficient justification for a Terry stop.  Id. at 121 (quoting Terry, 392 U.S. at 27).

The "reasonable suspicion" standard is "less demanding . . . than that of probable cause and requires a showing considerably less than preponderance of the evidence" insofar as the likelihood of criminal activity is concerned.  Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also U.S. v. Arvizu, 534 U.S. 266, 274 (2002) ("the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard").  Reasonable suspicion "can be established with information that is different in quantity or content than that required to establish probable cause."  Alabama v. White, 496 U.S. 325,

330 (1990).

The test for determining reasonable suspicion is an objective one. U.S. v. Cortez, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.") (emphasis added). In determining whether the suspicion on which the stop is made is reasonable, the Court evaluates the evidence from the objective perspective of a trained and experienced law enforcement officer. U.S. v. Cortez, 449 U.S. at 418; U.S. v. Ferero Rincon, 626 F.2d 218, 221-22 (2d Cir. 1980). Officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." U.S. v. Arvizu, 534 U.S. at 273 (internal quotations omitted). The Court considers the "totality of the circumstances" in determining whether there is "objective and particularized basis" for the officer's suspicion. U.S. v. Muhammad, 463 F.3d at 121; see also Arvizu, 534 U.S. at 273 ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing.").

In this case, Officer Martinez, an officer with over seven years of experience with the NYPD, (Martinez Tr. at 5) testified credibly that he saw a gun in Defendant's front jeans pocket. Having evaluated the testimony of the two NYPD officers and NYPD Lieutenant Barry, and that of Defendant's witness, Elijah Green, as to Defendant's clothing and actions on the evening of January 25, 2008; the location, speed and direction of the "unmarked car;" and the lighting in the area, the Court finds that the Government has provided credible evidence that Officer Martinez saw the handle of a gun protruding from Defendant's front pocket. This evidence, combined with credible evidence

as to Defendant's furtive activity after noticing the "unmarked" police car,[3] provides the requisite specific, objective, articulable facts sufficient to establish by a preponderance of the credible evidence that the police had grounds for a reasonable suspicion that the Defendant was engaged in or about to engage in criminal activity. The Government, thus, has satisfied its burden and Defendant's motion is denied in its entirety.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress the statements and physical evidence obtained as a result of his January 25, 2008, stop and search is denied in its entirety. The Clerk of Court is respectfully requested to terminate Docket Entry No. 9.

The next pretrial conference in this case will be held on May 28, 2008, at 4:30 p.m.

Dated: New York, New York
       May 16, 2008

/s/ LAURA TAYLOR SWAIN
United States District Judge

---

[3] "[N]ervous evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000).